UNDERWOOD and another, Respondents, vs. SMITH and another, Appellants.

*February 7 — February 26, 1901.*

*Public lands: Surveys: " Corners: " " Boundary lines: " Meandered lake: " Due east and west."*

1. The meander line of a lake as shown on the government survey is not a "boundary line; " nor is a meander post at the intersection of the meander line and section line a "corner; " nor is the distance between the meander post and the nearest corner the "length of a boundary line," within the meaning of the provisions of sec. 2396, R. S. of U. S., that "all corners marked in the survey . . . shall be established as the proper corners," which they are intended to designate, and that "the boundary lines actually run and marked . . . shall be established as the boundary lines . . . and the length of such lines, as returned, shall be held and considered as the true length thereof."

2. Where a fractional quarter quarter section is represented on the government survey as extending to a meandered lake, the lake itself and not the meander line is the boundary if the lake is within that subdivision; otherwise the boundary is the next line which divides quarter quarter sections.

3. Under the provision of sec. 2396, R. S. of U. S., that " boundary lines which have not been actually run and marked shall be ascertained

by running straight lines from the established corners to the opposite corresponding corners; but in those portions of the fractional townships where no such opposite corresponding corners have been or can be fixed, the boundary lines shall be ascertained by running from the established corners due north and south or east and west, as the case may be, to the watercourse  .  .  .  or other external boundary of such fractional township," — " due east and west " means a mean course between the north and south boundaries of the section, where such boundaries are ascertained and fixed.

APPEAL from a judgment of the circuit court for Portage county: CHAS. M. WEBB, Circuit Judge.  *Affirmed.*

This is an action to recover the stumpage value of a quantity of timber cut by the defendants.   The action was tried by the court, and the facts were not materially in dispute. The plaintiffs owned the N. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section 6, town 9, range 12, in Forest county, Wisconsin, the same being a fractional quarter section, as it appears upon the government map, and named "Lot 4."   The defendants cut a quantity of timber upon land which is claimed by the plaintiffs to be a part of said lot 4, but which is claimed by the defendants to be a part of the S. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of said section 6.   Whether the land on which the timber was cut was a part of lot 4, or was a part of the S. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$, was the question in controversy.   There was no dispute as to the amount or value of the timber cut.

The court found that the map on page 336, known in the case as " Exhibit I," is a copy of the original map of section 6, as shown by the United States survey and field notes.

The court further found that section 6, as it actually exists upon the ground, is accurately shown by the map on page 337, which is known as " Exhibit J."

It will be seen that by the government map most of the lake upon the east line of the section is represented to be in section 5, whereas in fact most of said lake is in section 6,

Underwood and another vs. Smith and another.

## EXHIBIT I.

### SECTION 6, TOWNSHIP No. 39 NORTH, RANGE No. 12 EAST,
#### OF THE 4TH PRINCIPAL MERIDIAN WISCONSIN

Scale 6 Chains to an Inch

) The above Map of Section 6 Township No 39 North Range
No 12 East of the 4th Principal Meridian, Wisconsin, is strict-
ly conformable to the field notes of the survey thereof on file
in the Office of the Commissioner of Public Lands Madison

and it is also some distance north of the location assigned
to it in the government map.

The court further found that by the report of the United
States survey the east quarter post of said section would
fall in the lake, and that for that reason no quarter post was
set; that the northeast, northwest, and southeast corners of
the section were found, and that the place for the southwest
corner fell in another lake, called Seven Mile Lake; that

Underwood and another vs. Smith and another.

EXHIBIT J.

the west and north quarter posts of the section were found, but that the south quarter post was not found, but that its proper place was determined, and both parties claim it to be in the same place; that the two meander posts upon the east line of the section were found; that the United States survey gives the distance from the southeast corner of the section to the south meander post as 26 chains and 93 links, while by actual measurement said distance is 45 chains and 92 links, and that the distance between the meander posts

as given by the United States survey is 31 chains and 52 links, while in fact the same is 30 chains and 8 links; that the distance from the north meander post to the north corner of the section as given is 19 chains and 75 links, while in fact the same is 9 chains and 39 links; that the north and south lines of the section purport to run due east and west; that a due east and west line from the west quarter post would strike the east section line in the lake at a point 47 chains and 5 links north of the southeast corner; that a line running from the west quarter post in a mean course between the north and south section lines would strike the east line of the section south of the lake at a point 1 chain and 46 links south of the meander post, and 44 chains and 46 links north of the southeast corner of the section; that if this last line is the true east and west quarter line, as plaintiffs claim, then the S. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of the section contains about 44 acres, and lot 4 contains about 36 acres, and the defendants trespassed upon the plaintiffs' land and cut therefrom timber of the value of $2,132.83, but if the place of the east quarter post is north of the south meander post and in the lake, and if the north corner of the S. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ should properly be fixed by apportioning to its east side $\frac{2000}{2693}$ of 46 chains and 10 links, as the defendants claim, then the said S. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ is 34 chains and 23 links long on the east side thereof, and contains about 60 acres of land, and lot 4 contains about 20 acres of land, and the defendants have not trespassed; that by the United States plat and survey the S. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ is represented to be a normal 40 acres of land, 20 chains in length on the east side thereof, and the N. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of lot 4 is represented as containing 33.70 acres; that the line claimed by the defendants as the north line of the S. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ is a line marked " Graham's Line " on Exhibit J, and runs at an angle of 16° 20′ from a due east and west line, and to this line the defendants cut, and no further.

Upon these facts, the court concluded that the true east and west quarter line of section 6 is a line running east from the west quarter post in a mean course between the north and south lines of the section, and that the plaintiffs should have judgment for the value of the timber cut. Judgment being entered in accordance with these findings for the plaintiffs, the defendants appeal.

For the appellants there was a brief by *John E. Martin*, attorney, and *Ryan, Hurley & Jones*, of counsel, and oral argument by *M. A. Hurley*.

For the respondents there was a brief by *Hooper & Hooper*, and oral argument by *Moses Hooper*.

Winslow, J. The question in the case is simply a question of correct surveying. The court is required to find the true line of division between the S. E. ¼ of the S. E. ¼ of section 6, and the N. E. ¼ of the same quarter section, or (as it is called on the government plat) lot 4. The line must be found by following the principles laid down by the laws of the United States, if they be applicable. *Whitney v. Detroit L. Co.* 78 Wis. 240. Sec. 2396 of the Revised Statutes of the United States provides as follows:

"The boundaries and contents of the several sections, half-sections and quarter-sections of the public lands shall be ascertained in conformity with the following principles:

"First. All the corners marked in the surveys, returned by the surveyor-general, shall be established as the proper corners of sections or subdivisions of sections, which they were intended to designate; and the corners of half and quarter sections, not marked on the surveys, shall be placed as nearly as possible equidistant from two corners which stand on the same line.

"Second. The *boundary lines*, actually run and marked in the surveys returned by the surveyor-general, shall be established as the proper boundary lines of the sections, or subdivisions, for which they were intended, and the length of such lines, as returned, shall be held and considered as the true length thereof. And the boundary lines which

have not been actually run and marked, shall be ascertained by running straight lines from the established corners to the opposite corresponding corners; but in those portions of the fractional townships where no such opposite corresponding corners have been or can be fixed, the boundary lines shall be ascertained by running from the established corners due north and south or east and west lines, as the case may be, to the watercourse, Indian boundary line, or other external boundary of such fractional township."

The defendants' claim is that the line from the southeast corner of the section north to the meander post is the east boundary line of the southeast fractional quarter section, and that the meander post is the northeast corner thereof; that, the length of such boundary line being marked on the government plat as 26 chains and 93 links, that must (under subd. 2 of the section quoted) " be held and considered as the true length thereof; " that, the actual length of such line on the ground being found to be 45 chains 78 links, the excess in distance must be apportioned, and the S. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ being represented to be a full 40 acres, of 20 chains square, its proportion of the actual distance must be found thus: As 26.93 is to 45.78 so is 20 to the east line of the parcel; which, when worked out, makes the east line of said 40 acres 34 chains in length, and establishes the north line of the parcel upon the line marked " Graham's Line " upon Exhibit J.

The defendants' case rests wholly on the correctness of this proposition. The difficulty with the contention is that the meander post is not a corner nor the meander line a boundary. The lake (if within the quarter quarter section) is the boundary, and not the meander line or meander post. *Whitney v. Detroit L. Co.* 78 Wis. 240. Hence the east boundary line of the quarter section did not stop at the meander post, but ran to the lake, if the lake was within the quarter quarter section. It follows from this that though the east boundary line of the S. E. $\frac{1}{4}$ is marked on the government

map, and the meander post must be held to fix the position of the line east and west, still such line does not terminate at the meander post, and 26 chains 93 links is not the length of the boundary line. The length of this east boundary line, therefore, was not returned by the government surveyors, and hence no case arises for the application of the provision that the length of boundary lines as returned shall be held and considered as the true length thereof.

We must therefore resort to other means to find the division line which we seek.

The plaintiffs' land is represented as extending to the lake; hence the lake is the northern boundary, if in fact it be in that quarter quarter section. When a lake or watercourse is the boundary, we can proceed in search of that boundary until we reach the next line which divides quarter quarter sections, and there, if the lake be not reached, we must stop. *Lally v. Rossman*, 82 Wis. 147. This necessitates the ascertainment of the east and west quarter line of the section, which was not run through by the government surveyors to the east boundary line, because supposed to end in the lake. The west quarter post of the section is found, and both the north and south lines of the section are found. The first subdivision of the statute quoted says that "the corners of half and quarter sections not marked on the surveys shall be placed as nearly as possible equidistant from two corners which stand on the same line." The second subdivision says that "boundary lines which have not been actually run and marked shall be ascertained by running straight lines from the established corners to the opposite corresponding corners; but in those portions of the fractional townships where no such opposite corresponding corners have been or can be fixed, the boundary lines shall be ascertained by running from the established corners due north and south or east and west lines, as the case may be, to the watercourse, Indian boundary line, or other external boundary line of such fractional township."

It is unnecessary here to inquire which one of these provisions is applicable to the present case. Either one of them brings the east quarter post south of the lake, and south of the meander post, as is shown by reference to the map, Exhibit J. Due east and west means a mean course between the north and south boundaries of the section, where such boundaries are ascertained and fixed. It is so held in the circulars of information issued by the general land office of the United States, June 2, 1887, December 9, 1890, and October 16, 1896, and the same rule is laid down by standard writers on surveying.

This corner being established south of the lake, the defendants' whole contention must fail. The S. E. ¼ of the S. E. ¼ becomes a normal quarter, with its north line established on a mean line between the south line of the section and the east and west quarter line.

*By the Court.*— Judgment affirmed.