## PHILLIPS v. HINK.

A surveyor, who establishes the line between the southeast and s uthwest quarters of a section containing no quarter section posts set by the United States surveyor by surveying only the south half of the section, and ascertaining the north quarter section corner between the two quarter sections by running a line from the southeast corner of the section to the northeast corner of the quarter section, and from the southwest corner of the quarter section, and con-

necting the two quarted section corners by a line running east and west, and dividing that line equally between the two quarter. sections, does not adopt the method prescribed by Rev. Pol. Code, § 923, providing that a resurvey of lands by surveyors shall be according to the laws of the United States, and Rev. St. U. S. § 2396 [U. S. Comp. St. 1901, p. 1473], providing that boundary lines not actually run shall be ascertained by running straight lines from the established corners to the opposite corresponding corners, etc., and the instructions of the Commissioner of the General Land Office following the statute, and the survey does not establish the boundary.

Where, in an action to recover land, plaintiff failed to offer evidence proving that he was the owner thereof or had a right to the possession thereof, and it appeared that he stipulated that defendant had occupied the same for over three years, plaintiff could not recover.

(Opinion filed, January 15, 1908.)

Appeal from Circuit Court, Minnehaha County.  Hon. JOSEPH W. JONES, Judge.

Action by Sylvester Phillips against John J. Hink.  From a judgment for defendant, and from an order denying a new trial, plaintiff appeals.  Affirmed.

*Robertson & Dougherty* and *Bailey & Voorhees,* for appellant. *G. R. Krause* and *Bates & Parliman,* for respondent.

CORSON, J.  This is an appeal by the plaintiff from a judgment on a directed verdict in favor of the defendant.  The action was instituted by the plaintiff to recover a tract of land embracing about 21 acres in the county of Minnehaha, and the value of the rents and profits of the same of $44, and $350 damages for withholding the possession thereof.  The complaint is in the usual form, and alleges "that the plaintiff was the owner and seised in fee and possessed and entitled to the possession of that certain tract of land situated in Minnehaha county, described as follows, to-wit; * * * That while the plaintiff was so seised and possessed the defendant, without right or title, and against the will and against the consent of the plaintiff, entered into the possession of about 21 acres on the east side of said tract, and described as follows: * * * and ousted and ejected this plaintiff therefrom, and now unlawfully withholds the possession thereof from this plaintiff, to his damage in the sum of three hundred fifty ($350.00) dollars." To this complaint the defendant filed answer denying each and ev-

ery allegation therein contained. ' At the close of the plaintiff's evidence, defendant moved the court to instruct the jury to return a verdict in his favor on the grounds that plaintiff had failed to prove the allegations contained in his complaint, and that plaintiff had failed to show facts sufficient to constitute a cause of action against the defendant, in that no legal evidence was introduced showing the true boundary line north and south between the southwest quarter of 3 and the southeast quarter of 3, and.that it appears from the evidence of the surveyor that in establishing the center corner of the section he failed to follow the requirements of the law of the Unites States and the .instructions of the United States Land Office. The motion was sustained, and thereupon the court instructed the jury to return a verdict in favor of the defendant.

It is contended by the counsel for the defendant in support of the court's rulings in directing a verdict in his favor that there is no evidence in the record proving or tending to prove that the plaintiff was the owner of any land in the section in question, or that the plaintiff was in possession of the tract of land or any portion thereof described in the complaint, or that the defendant ousted him, or that the defendant withheld the possession thereof, and that these facts being alleged in the complaint, and denied by the answer, the plaintiff was required to offer evidence proving or tending to prove the same, and that, failing to do so, the court was fully justified in directing a verdict in favor of the defendant. An examination of the record discloses the fact that counsel for the defendant are right in their contention, as there is no testimony proving, or tending to prove, that plaintiff was the owner of the quarter section of land described in his complaint, was in possession of or entitled to the possession of the same or any portion thereof, and no evidence proving, or tending to prove, that the defendant had ousted the plaintiff from any portion of said land or withheld the possession of the same from him.

It is also quite apparent from an examination of the record that there was no legal evidence that the line as claimed by the defendant between the southwest quarter and southeast quarter of section 3 was not the true boundary line between those two

quarter sections. It was shown· by the field notes of the United States survey of section 3 introduced in evidence by the plaintiff that there was no quarter section post originally set by the United States surveyor at the time the township was subdivided into sections to mark the quarter section corners in the center of the section, and the only evidence introduced on the part of the plaintiff tending to prove that the line as it existed between the southeast and southwest quarters of section 3 was not the true line was the evidence of the county surveyor of Minnehaha county, who in running the line between those two quarters failed to observe the requirements of the law of the United States and of this state. It appeared from his evidence that the only survey made by him was of the south half of section 3, and that he ascertained what he claims to be the north quarter section corner between the two quarter sections by running a line from the southeasterly corner of the section to the northeasterly corner of the quarter section, and from the southwesterly corner of the quarter section, and connecting these two quarter section corners by a line running east and west, and dividing that line equally between the two quarter sections. This did not constitute the legal method of ascertaining the north quarter section corner between those two quarter sections. Section 923 of the Revised · Political Code of this state provides: "The resurvey and subdivision of lands by all surveyors shall be according to the laws of the United States and instructions issued by the officers in charge of the land surveys in all respects." And section 2396. Rev. St. U. S. [U. S. Comp. St. 1901, p. 1473], provides: "The boundaries and contents of the several sections, half sections, and quarter sections of the public lands shall be ascertained in conformity with the following principles: First. All the corners marked in the surveys, returned by the Surveyor General, shall be established as the proper corners of sections, or subdivisions of sections, which they were intended to designate and the corners of half and quarter sections not marked on the surveys shall be placed as nearly as possible equidistant from two corners which stand on the same line. Second. * * * And the boundary lines, which have not been actually run and marked shall be ascertained by running straight lines from the es-

tablished corners to the opposite corresponding corners." The instructions issued by the Commissioner of the General Land Office, and approved by the Secretary of the Interior, relating to the subdivision of sections, is found in the last circular issued by the General Land Office (March 14, 1901), and are as follows: "Under the provisions of the act of Congress, approved February 11, 1805, the course to be pursued in the subdivision of sections into quarter sections, is to run straight lines from the established quarter section corners, United States surveys, to the opposite corresponding corners. The point of intersection of the lines thus run will be the corner common to the several quarter sections, or in other words, the legal center of the section." It will be observed, both by the act of Congress, and the instructions, that "the boundary lines which have not been actually run and marked shall be ascertained by running straight lines from the established corners of the section to the opposite corresponding corners." As before stated, the surveyor failed to observe the requirements either of the law or instructions. His method of making his survey seems to have been by running from the southeast corner of the section one-half mile to the northeast corner of the quarter section, and from the southwest corner of the section one-half mile north to the northwest corner of the quarter section, and then running a line from the two quarter corners through the center of the section, and fixing the northwest and northeast corners of the quarter sections at a point equidistant from the two side quarter corners. As it clearly appeared from the field notes of United States surveyor who subdivided the township into sections that he established no quarter corners at the center of the section in controversy, the method prescribed by the United States Land Officers was the only one that could have been legally adopted.

The subject of the method of surveying and ascertaining the center quarter section corner of the section was very fully considered by the Supreme Court of Iowa in the analogous case of Gerke v. Lucas, 92 Iowa, 79, 60 N. W. 583. That learned court, after a review of the United States law and instructions of the Land Department and the state law, concludes its opinon as follows: "We are not at liberty to so construe the act of Congress as to

set aside the construction placed thereon by the Secretary of the Interior. Without reference to the proper instructions of the act of Congress, we plant our decision on the fact that by the act of the Legislature the construction placed upon the federal statute by the proper officers of the general government is binding upon us, and that corners, in cases like this, must be ascertained in conformity therewith. This is decisive of the controversy, and the court below properly excluded the offered evidence as tending to show that it was proper to adopt another method. The court properly directed a verdict for the defendant. Affirmed." Chan v. Brandt, 45 Minn. 93, 47 N. W. 461; Underwood v. Smith, 109 Wis. 334, 85 N. W. 384. In view of the United States statutes and instructions of the Land Department, the surveyor failed to establish by his survey that the line existing between the southeast and southwest quarters of section 3 was not the true line as established by the government survey, and the plaintiff therefore showed no right to recover as against the defendant in this action independently of his failure to show any title or right of possession to any part of the land embraced within the two quarter sections involved in this action. Not only did the plaintiff fail to offer any evidence proving or tending to prove that he was the owner of the tract of land in controversy, or had any right to the possession thereof, but he expressly stipulated that the defendant had occupied the same for a period of three years, thereby in effect admitting that plaintiff was not in possession of the same.

Finding no error in the record the judgment of the circuit court and order denying a new trial are affirmed.