THUNDER LAKE LUMBER COMPANY, Respondent, vs. CARPENTER, Appellant.

*September 17—October 14, 1924.*

*Boundaries: Meander posts: Deficiency in acreage: How prorated: Section quarter posts not located.*

1. Under the located corners and established lines here shown, the east-and-west quarter line should be placed equidistant between the north and south lines of the section, distributing any deficiency in acreage over the entire section.  p. 583.
2. A so-called meander corner is not a fixed point for measurements, as are established section corners and quarter corners, but is a marker for courses.  p. 583.

APPEAL from a judgment of the circuit court 'for Oneida county: A. H. REID, Circuit Judge. *Affirmed.*

Ejectment action concerning real estate in section 27, town 39 north, range 11 east, in said county.

Part of the west line of said section ran through South Fork lake. North Fork lake cut off a considerable portion of the east front of said section and crossed the south and the north lines. Each of said lakes was meandered.

According to the government plat, lot 8, to which plaintiff had record title, contained 43.15 acres, and was on the edge of North Fork lake and at the north line of said section; lot 7, to which defendant had record title, represented as containing 45.60 acres, was just south of lot 8 and also bordering on the lake.

The northwest corner was located on the land by the government survey and was found at the time of the surveys made on behalf of the respective parties, and there is no dispute concerning its location. The southwest corner was not actually located, being a short distance out in South Fork lake, but the parties are agreed as to its position as determined by bearing trees described in the original field-notes. The west quarter post was not located, that portion of the west line being in South Fork lake. The northeast corner was also not actually located, falling in North Fork lake. The east quarter corner appears from the government field-notes to have been located at the time of the original survey, but apparently all indication thereof by monuments has been destroyed by fire. The quarter corner on the north line was also located. Plaintiff's surveyor testified without contradiction to having found the location of the southeast corner on the land from one of the bearing trees still found. On what appears to have been the west line and at a point by actual measurement 52.45 chains north from the said southwest corner and 17.10 chains south from the northwest corner, there was found on the shore of the lake a meander post described in the government field-notes and its existence agreed upon by both surveyors and substantially on the line

between the two corners. According to the government field-notes, however, such meander post was described as being 44.19 chains north from the southwest corner and 35.81 chains south of the northwest corner, the entire west line being there described as 80 chains instead of the actual 69.55 chains. Another meander post was located a little north of the southwest corner and also on the line. A meander post was found by both surveyors set on about the north line where the same ended in North Fork lake, but with a discrepancy between the actual and recorded measurements.

The trial court adopted, with some slight modification, plaintiff's contention as to the method of distributing the conceded and great shortage.

The result very largely decreased plaintiff's acreage from the figures given in the original field-notes for lot 8, and still more materially reduced the acreage of defendant's lot 7, and greatly lessened his lake frontage from what was shown on the government plat.

From the judgment defendant appeals.

For the appellant there was a brief by *Bradford & Bradford* of Appleton, and oral argument by *F. S. Bradford.*

*Charles F. Smith, Jr.,* of Rhinelander, for the respondent.

ESCHWEILER, J. Defendant's contention seems to be that by following the government field-notes and assuming as a starting point the position of the southwest corner in the lake, though never actually located, the meander post found on the west line in the north half of said section and described as being 44.19 chains north from such southwest corner is a fixed and absolute government monument, and, allowing for the proportional deductions, compels the location of the east-and-west quarter line at nineteen chains south of the northwest corner and the location of the north quarter or eighth line nine and one-half chains south of the

north section line, thereby throwing the entire shortage to the north.

The method pursued under defendant's theory of locating the north quarter post and carrying to the south the north-and-south quarter line is immaterial here if the above described method used in locating the west quarter corner is incorrect, and we are satisfied that it is incorrect. The so-called meander corner is not a fixed point for measurements, as are established section corners and quarter corners, but is a marker for courses. *Underwood v. Smith,* 109 Wis. 334, 340, 85 N. W. 384; *Wisconsin Realty Co. v. Lull,* 177 Wis. 53, 59, 187 N. W. 978.

The situation here presented is one where the northwest and the southeast corners were actually located on land by the government surveys and are now found. The four boundary lines of the section were actually run and the east quarter corner and the north quarter corner actually located by the government surveyors. The southwest corner, though not actually located, was definitely fixed, and its location is agreed upon by the parties and was even located on the ice by defendant's surveyor as a starting point for his method of survey.

With such established points and lines and under the rules fixed by the United States Land Office and followed by the courts in the disposition of such matters, the west quarter corner never having been located and fixed by the government so as to become a permanent standard, the trial court properly determined that the true east-and-west quarter line should be placed equidistant between the north and south lines of the section, thus distributing the conceded deficiency in this section equitably and ratably over the entire section.

The judgment was therefore proper and must be affirmed.

*By the Court.*—Judgment affirmed.