Chicago Club of Lake Geneva, Wisconsin, Appellant,
vs. Ryan and others, Respondents.

*December 9, 1930—January 13, 1931.*

274

For the appellant there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Ralph W. Jackman*.

For the respondents there was a brief by *Simmons, Walker, Wratten & Sporer* of Racine, and oral argument by *John B. Simmons*.

FAIRCHILD, J.   One Williams, at an early day, owned lots 2 and 3 in section 18, described in the statement of facts. He subdivided his land into long strips of varying width extending from the east-and-west quarter-section line north to Lake Geneva.   These strips he designated as "pieces," and lot 2 was divided into ten pieces numbered from 1 to 10 beginning at the east side of the lot, and lot 3 was divided into nine pieces numbered in the same way.

Appellant acquired pieces 9 and 10 and part of piece 8 in lot 2 many years before this controversy arose, and later became the owner of the Guyon-Rawleigh lot, which is in lot 3.   The date of the subdivision by Williams is not known, but it does appear that he pointed out a stake as the southwest corner of lot 2 and the southeast corner of lot 3, and which was assumed to be the center of the section, to-

gether with the witness tree, and this was done as early as 1875 or 1876. There are conveyances in evidence in which the description is tied to this point and other competent evidence to show that Williams monumented the southeast corner of lot 3 by a stake and by reference to a witness tree with bearings and distance.

The court is required to find the true line of division between the property designated as Guyon-Rawleigh and that designated as Lake Geneva Club. In order to do this under the descriptions in the conveyances, it is necessary to locate the common corner of lots 2 and 3. It appears from the evidence that all pieces conveyed, except the piece purchased by Johnson, were so conveyed by reference to the stake set by Williams as the common corner of the two lots. An original survey and long established boundary lines actually run and marked on the ground are reliable indicators of boundary lines either of sections or of subdivisions for which they were clearly intended.

The trial court, in passing upon the questions which arose by reason of the comparison of the survey of 1909 with the earlier and subsequent surveys, found that the center of the section and the southeast corner of the northwest quarter-section which is the common corner of lots 2 and 3 had been definitely fixed prior to 1876, relocated in 1896, and generally accepted. The correctness of the Geraghty or 1909 survey was challenged and the court found that in certain instances he had ignored fixed monuments, and it does appear that he put aside from his calculations the long-established center of the section and the evidences of long-continued occupancy in accordance with the common corner of lots 2 and 3. Each succeeding survey may possibly vary some from the former ones, but the established boundary lines are not disturbed because of this difference.

Plaintiff calls attention to the fact that the lines of the property deeded by Norton to defendants' predecessors in

title were definitely fixed by the survey and monuments set at the time of the deed from Norton to Johnson in 1909. The Johnson deed and the O'Beirne-Logan deed did use as the southeast corner of lot 3 the point fixed by the Geraghty survey, but the predecessors in title of the Lake Geneva Club, noticing the discrepancy and being of the opinion that there was land between the west boundary of the Guyon-Rawleigh tract and the Johnson tract not covered by the description, had added to their description the following words: "Also any and all other real estate now standing in the name of Lucy E. Norton in lot 3 of the original survey by the United States government of fractional section 18, township 1 north, range 17 east." However, this case is not ruled by that description. Plaintiff's claim is to be determined, and the question here is, what land was included in the deeds under which it comes into its ownership. The location of a boundary line or corner is a fact to be proved, and the plaintiff in an ejectment action has the burden of proof and must recover, if at all, on the strength of his title. He cannot depend on the weakness or indefiniteness of the opposing claim.

The plaintiff bases its claim to title in the strip of land in dispute on its purchase of the 177.5 feet off the east side of lot 3. This property reaches the plaintiff through conveyances starting from Williams. For many years the description through which this title comes plainly referred to the subdivision made by Williams and the lines of that subdivision as fixed and monumented by him.

Plaintiff insists the controlling lines and points fixing the boundaries ought to be located and fixed by the survey made by Geraghty in 1909, and claims that there is included in their purchase a strip of land on the east side of property claimed by defendants. This strip is 16.75 feet wide on the southern boundary and approximately 13.6 feet wide at its northern boundary on the shores of Lake Geneva. The

variation between the Geraghty survey and the Williams survey accounts approximately for the width of the disputed strip. The exact location of the starting point of the description in the conveyance under which plaintiff claims therefore becomes important, and under the evidence the court was justified in reaching the conclusion he did, for there is ample evidence to sustain a finding that the southeast corner of the Guyon-Rawleigh piece owned by plaintiff is identical with the southeast corner of lot 3, and that that point is the one fixed by Williams and monumented by him. *Racine v. Emerson,* 85 Wis. 80, 55 N. W. 177; *Marsh v. Mitchell,* 25 Wis. 706; *Underwood v. Smith,* 109 Wis. 334, 85 N. W. 384.

Plaintiff's Guyon-Rawleigh piece has as its east line the east line of lot 3, and it follows that the east line as run and marked is a positive factor in determining other lines located by reference thereto. Plaintiff's title deeds give it the ownership only of the lands in the original subdivision, consisting of the east 177.5 feet of lot 3, and these 177.5 feet do not extend so far west as to interfere with or give plaintiff any right over the premises occupied by defendant.

The trial court in its decision gave considerable weight to evidence introduced relative to an old fence so located with reference to the Williams southeast corner of lot 3 as to be on the east line thereof and to long-established occupancy in conformity with the Williams lines as fixed by him when subdividing his property. This is one of the cases where testimony tending to show local repute of existence of fences and landmarks is properly used. *Nys v. Biemeret,* 44 Wis. 104; *Racine v. Emerson,* 85 Wis. 80, 89, 55 N. W. 177. Such evidence is of value in proving the true location of the lines. It was not offered for the purpose of binding any one by acquiescence in a mistaken or wrong boundary. There is no claim of any controversy or dispute over the lines dur-

ing all these years until this one arose between plaintiff and defendants. Old line fences and long-established occupancy in conformity with lines positively fixed by the original owner become competent evidence to show the true lines and boundaries of land. *Gilman v. Brown,* 115 Wis. 1, 91 N. W. 227; *Nickel v. Chapman,* 163 Wis. 348, 158 N. W. 90. This rule, of course, does not permit the use of ill-founded rumor or mere hearsay testimony. After stakes are set by the original surveyor, if buildings are erected or a fence placed according to such stakes while they were present, such fences or buildings become monuments after the stakes disappear and consequently the next best evidence of the true line. *Racine v. Emerson,* 85 Wis. 80, 55 N. W. 177, *supra.*

The ruling of the court on plaintiff's objection to some of the evidence was reserved and it appears that no ruling was ever made. The nature of the evidence objected to was such, under the circumstances of this case, that the effect cannot be prejudicial to plaintiff.

The case was tried without a jury and the evidence admitted without objection amply sustains the decision of the trial court. As to the evidence given by the witness Skeels, we find nothing prejudicial to the plaintiff's interests when the whole record is considered, and we are of the opinion that it is unnecessary to treat further the objections to testimony.

*By the Court.*—Judgment affirmed.