LEE WILSON & COMPANY *v.* UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 110.　Argued October 4, 5, 1917.—Decided November 5, 1917.

If, in the making of a survey of public lands, an area is through fraud or mistake meandered as a body of water or lake where no such body of water exists, riparian rights do not accrue to the surrounding lands, and the Land Department, upon discovering the error, has

24.                         Syllabus.

power to deal with the meandered area, to cause it to be surveyed, and lawfully to dispose of it.

The fact that its administrative officers, before discovery of the error, have treated such a meandered tract as subjected to the riparian rights of abutting owners, under the state laws, and consequently as not subject to disposal under the laws of the United States, can not estop the United States from asserting its title in a controversy with an abutting owner; and even as against such an owner, who acquired his property before the mistake was discovered and in reliance upon actions and representations of federal officers carrying assurance that such riparian rights existed, the United States may equitably correct the mistake and protect its title to the meandered land. The equities of the abutting owner, if any, in such circumstances, are not cognizable judicially, but should be addressed to the legislative department of the government.

The Swamp Land Act of September 28, 1850, c. 84, 9 Stat. 519, did not convey land of its own force, without survey, selection or patent.

A suit by the United States to quiet its title to land which was excluded from survey through an erroneous meander, against a defendant owning abutting land under federal patent and erroneously claiming, in virtue of his patent, riparian rights in the meandered area, is not a suit to vacate or annul the defendant's patent, and the statute of limitations of March 3, 1891, c. 561, 26 Stat. 1095, is not applicable in defense.

In the survey of a township in Arkansas, part of the land was erroneously meandered and described on the plat as a "lake," and the lands abutting on the meander line were subdivided into lots. The State selected the township under the Swamp Land Act of 1850, describing it by number and stating an acreage equal to the entire area within the township lines minus the area meandered. After the Act of March 3, 1857, c. 117, 11 Stat. 251, by which Congress confirmed "the selection of swamp and overflowed lands granted to the several States . . . heretofore made and reported to the Commissioner of the General Land-Office," and provided that such selection should be approved and patented, a patent was issued to Arkansas purporting to convey "the whole of the township" (giving its number,) except section 16; and stating the acreage conveyed at a figure substantially the same as the total acreage within the township lines minus that section and the meandered area. *Held*, that the effect of the meander was to exclude the meandered area from the township, and that neither the selection, the confirmatory act nor the patent could be construed as embracing it.

*Chapman & Dewey Lumber Co.* v. *St. Francis Levee District*, 232 U. S. 186.

*Held*, further, that the State could have derived no title to the meandered area through the Compromise Act of April 29, 1898, c. 229, 30 Stat. 367, as a result of such selection and confirmation.

227 Fed. Rep. 827, affirmed.

THE case is stated in the opinion.

*Mr. Charles T. Coleman* and *Mr. Henry D. Ashley* for appellant.

*The Solicitor General*, with whom *Mr. W. W. Dyar* was on the brief, for the United States.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The United States, asserting that designated parcels of land were part of its public domain, sought a decree quieting its title. Sustaining the title thus asserted and rejecting a claim to the contrary on the part of the defendant, the trial court awarded the relief prayed (214 Fed. Rep. 630), and the appellant, who was defendant, seeks on this appeal to reverse the decree of the court below sustaining the trial court. 227 Fed. Rep. 827. A reference to the origin and subject-matter of the controversy and a statement of some undisputed and indisputable facts will clarify and limit the issues to be passed upon.

The public survey of the United States concerning the area in which the land was situated (Township 12 North, Range 9 East of the Fifth Principal Meridian, County of Mississippi, State of Arkansas) was filed in 1841. By that survey and the plat and field notes thereof it appeared that in sections 22, 26 and 27 there was stated to be a body of water styled a lake which was excluded from

the survey by means of a meander line, diminishing to the extent of the excluded area the acreage surveyed in the sections in question and thereby causing them to become fractional. As a matter of course also the meander line to the extent that it excluded the body of water from the survey diminished the area of surveyed land lying within the exterior boundaries of the township. In 1853 the State of Arkansas, it may be assumed, complying with legal requisites and conforming to the administrative regulations of the Land Department, filed a list of selections under the grant made to it of swamp and overflowed lands by the Act of Congress of 1850, 9 Stat. 519. The selections included Township 12 and stated the acreage which it embraced conformably to the reduction of such acreage made by the meander line. In 1857 Congress confirmed "the selection of swamp and overflowed lands granted to the several States . . . heretofore made and reported to the Commissioner of the General Land-Office" and provided that such selection "shall be approved and patented to the said several States . . ." (c. 117, 11 Stat. 251). In 1858 a patent was issued by the United States to the State of Arkansas, the land patented being described as follows: "Township Twelve (12) North Range Nine (9) East. The whole of the township except Section sixteen (16) containing fourteen thousand five hundred and sixty-five acres and three hundredths of an acre, according to the official plats of survey of the said lands returned to the General Land Office, by the Surveyor-General." The acreage thus stated substantially conformed to the reduction brought about by the omission of section 16 which had already been given to the State and of the area of the lake which had been meandered and excluded from the survey.

Undoubtedly following the patent for a considerable period of time the officers of the Land Department treated the meandered and excluded surface of the lake as not

being part of the public domain subject to survey and to disposal by the United States, upon the theory that the same by the operation of the meander had been excluded from the survey and made subject to the riparian rights of the several abutting owners under the state law. And it may be admitted that the State of Arkansas acted upon the assumption that all the land, whether surveyed or unsurveyed, within the exterior limits of the township had passed to it. In 1907 or thereabouts, growing out of some asserted right to have the meandered and unsurveyed area surveyed and disposed of as part of the public domain, on the ground that, through fraud, error or mistake, the area in question had been stated in the survey to be a lake when in fact it was not and was on the contrary land which should have been surveyed, the Land Department after due notice undertook an investigation of the subject. Without stating the proceedings which ensued, it suffices to say that in 1909 it was definitely found that the alleged fraud, error or mistake of the survey was established because there was no lake to meander at the time the survey was made, it being found that all the evidence conclusively so established. Giving effect to this the unsurveyed area was ordered surveyed and homestead entries were initiated thereen. This controversy arose between the rights of the United States and such entrymen and those asserted by the defendant below who held the rights of the State of Arkansas, if any, to the area in question as evidenced by the patent or as embraced by the grant of swamp and overflowed lands and the action of the United States authorities taken on the subject.

It thus becomes apparent that the subject of the controversy relates solely to the unsurveyed area resulting from the erroneous assumption as to the existence of a lake and embraces only 853.60 acres. It also is certain that as the result of the concurrent findings of fact by the two courts and the admission made by the parties

there is no controversy as to the facts concerning the error committed as to the supposed lake, leaving therefore to be decided only the legal questions which arise from the admitted facts. As a means of putting out of view questions which are not debatable we at once state two legal propositions which are indisputable because conclusively settled by previous decisions:

*First.* Where in a survey of the public domain a body of water or lake is found to exist and is meandered, the result of such meander is to exclude the area from the survey and to cause it as thus separated to become subject to the riparian rights of the respective owners abutting on the meander line in accordance with the laws of the several States. *Hardin* v. *Jordan,* 140 U. S. 371; *Kean* v. *Calumet Canal Co.,* 190 U. S. 452, 459; *Hardin* v. *Shedd,* 190 U. S. 508, 519.

*Second.* But where upon the assumption of the existence of a body of water or lake a meander line is through fraud or error mistakenly run because there is no such body of water, riparian rights do not attach because in the nature of things the condition upon which they depend does not exist and upon the discovery of the mistake it is within the power of the Land Department of the United States to deal with the area which was excluded from the survey, to cause it to be surveyed and to lawfully dispose of it. *Niles* v. *Cedar Point Club,* 175 U. S. 300; *French-Glenn Live Stock Co.* v. *Springer,* 185 U. S. 47; *Security Land & Exploration Co.* v. *Burns,* 193 U. S. 167; *Chapman & Dewey Lumber Co.* v. *St. Francis Levee District,* 232 U. S. 186.

Coming to test the questions for decision in the light of these propositions there can be no doubt that the case is taken out of the reach of the first and is brought under the control of the second, as the result of the conclusive finding as to the mistake committed concerning the existence of the lake and the consequent error in the survey,

unless it be that for some reason the unquestioned rule which the second proposition embodies is inapplicable. Indeed, putting aside a contention made as to the face of the patent, which we are of opinion is sufficiently disposed of by what we have already said, all the other contentions proceed not upon a challenge of the doctrine embodied in the second proposition but upon the erroneous theory that it is inapplicable to the case in hand—an error which we shall, briefly demonstrate by separately considering the contentions.

*a.* In the first place it is. in many forms of statement insisted that although the patent expressly referred to the plat and survey and purported only to grant the acreage surveyed as reduced by the exclusion from the survey of the body of the lake, that becomes negligible since the right of the State depended upon the grant made by the Swamp Land Act, the selection made under that act and the approval of that selection by the Act of Congress of 1857, all of which must be considered in determining the grant made to the State and give rise when considered to the irresistible implication that all the land embraced in Township 12 passed to the State. Concretely stated the proposition is this: That as the selection made by the State was of Township 12, the exterior bounds of that township became the measure of the State's title irrespective of what was surveyed or unsurveyed within those exterior lines. But it is at once obvious that this proposition rests upon a contradictory assumption, since it treats the designation of Township 12 as the measure of the rights conferred and immediately proceeds to exclude from view the criteria by which alone the existence and significance of the insisted upon designation (Township 12) are to be determined. Aside from this, however, it is further apparent that the contention disregards the very basis upon which the decided cases upholding the doctrine stated in the second proposition

rest, which is that the effect of a meander line is to exclude absolutely from the township the area meandered and to cause therefore its nature and character to depend not upon the exterior lines of the township but upon the condition existing within those lines made manifest and fixed by the necessary legal consequences resulting from the meander line. This conclusive view is clearly pointed out in *Chapman & Dewey Lumber Co.* v. *St. Francis Levee District, supra,* pp. 196, 197. And that case also, p. 198, completely answers the argument that although the land was not embraced in the selection, was not included in the township because unsurveyed and did not pass by the patent or the selection independently considered, it yet must be treated as having passed to the State under the Swamp Land Act of 1850 because it was eligible to be selected under that act.

*b.* The proposition that title to the land must be considered as being in the State because of the Compromise Act of 1898 (c. 229, 30 Stat. 367) is on the face of that act, we think, in view of what we have said, devoid of merit. We say this because the contention rests upon the assumption which we have already disposed of that the land excluded by the meander line was embraced by the selection approved by the Act of Congress of 1857.

*c.* The assertion that an estoppel against the United States arose from the fact that the administrative officers of the government before the discovery of the fraud or error as to the existence of the lake had treated the area meandered as subjected to the riparian rights of the abutting owners under the state law and consequently not subject to be disposed of by the United States, in substance but disregards the right to correct such error conclusively recognized as existing in the administrative officers of the Land Department by the decisions which we have previously cited.

*d.* The contention that power did not exist on the dis-

covery of a mistake to survey and dispose of public land which had been excluded from a survey by the drawing of a meander line on the mistaken assumption of the existence of a body of water, because of the five years' limitation on the right of the United States to vacate or annul a patent (Act of March 3, 1891, 26 Stat. 1095), again but disputes the settled doctrine as to the existence of such power and besides rests upon the unsound assumption that the correction of such a mistake is an attempt to vacate or annul the patent. When rightly considered we think, as pointed out by the United States in argument, the ruling in *United States* v. *Chandler-Dunbar Co.*, 209 U. S. 447, instead of sustaining, is in conflict with the proposition.

Finally, the suggestion that as the defendant holding under the State acquired its rights before the mistake was discovered in reliance upon the actions and representations of the officers of the United States as to the existence of riparian rights in accordance with the state law as the result of the meander line, the United States should not be permitted to correct the mistake committed as to the meander line and thus protect its title, but in a different form restates the argument which we have already disposed of. Besides, if for the sake of the argument we assume the existence of the equitable considerations insisted upon, it is manifest that the prayer for their enforcement is in the nature of things beyond the sphere of judicial authority however much relief on the subject may be appropriately sought from the legislative department of the government.

There being then no error, it follows that the decree below must be and it is

*Affirmed.*