Wisconsin Realty Co. v. Lull, 177 Wis. 53.

───────

WISCONSIN REALTY COMPANY, Respondent, vs. LULL and another, imp., Appellants.

*March 16—April 11, 1922.*

*Boundaries: Meander lines in government survey: Variance with actual locations: Deeds: Intention of parties: Reference to government plat: Acreage: Quantity designated "more or less."*

1. Courses and distances of meander lines in a government survey subsequently incorporated in a plat made from field-notes are not controlling as to the boundaries of land conveyed with express reference to a body of water or other natural boundary along which such meander lines are run, such lines being primarily for the purpose of measuring the quantity of land for which the United States government is to receive the purchase price, rather than as exact surface limitations.

2. Where the meander lines of a river as shown on the government plat do not correspond to a substantial degree with the actual location and course of the river, a person claiming

under a deed describing the land as "lot 1 in section 21, being all the land in said section north of the Flambeau river and containing 65.48 acres more or less according to the United States government survey," takes merely the land platted as lot 1, though the actual location of the river extended beyond that shown by the meander lines of the plat.

3. The general rules as to the greater or lesser degree of weight and control to be given to one form of description as to property conveyed as compared with another are but helps in the construction of the instrument to discover the real intent of the parties, and are not absolute.

4. In ascertaining the boundaries of land conveyed, the test is the real intention of the parties to the conveyance; and this is to be gathered from the entire writing, and, when necessary, by resort to the circumstances surrounding the transaction.

5. Express reference to the United States government survey makes the plat as recorded in pursuance to the field-notes, if not a substantial part of the deed, at least an appropriate source of reference in ascertaining the real intention of the parties as to the location of boundaries.

6. The reference to specific acreage is generally required to yield to the result of actual measurement according to plainly defined lines or natural monuments; but the question of quantity may be considered, and under the facts had a controlling weight.

7. The term "more or less" in a conveyance covers an excess or deficit that is within a reasonable limit, the risk as to which is to be assumed by the respective parties, but does not cover a situation where it is evident that there is a gross mistake.

APPEAL from a judgment of the circuit court for Price county: G. N. RISJORD, Circuit Judge. *Affirmed.*

This action is brought to quiet title to certain lands in section 21, town 39, range 2 west, in Price county.

This section was surveyed by the United States government in 1856 with the usual field-notes by the surveyor. A plat was made therefrom and properly recorded. Such plat has been treated up to the time of this action as a substantially correct representation of the situation. The descriptions as thereon given have been substantially conformed with for taxation purposes at all times and in the subse-

quent conveyances and agreements except as hereafter specified.

As so platted and as above indicated the Flambeau river appeared to be entirely within the northeast quarter of said section.    The plat represented lot 1, said to contain 65.48 acres, as being that much of said northeast quarter as was north of the river as platted.    Lots 2 and 3, of 31.06 and 38.62 acres, respectively, comprised the south half of said northeast quarter south of the platted river.    Lot 4, platted as 50.85 acres, comprised the remaining portion of said northeast quarter, which lay west of the platted river, together with the forty acres of the northeast quarter of the northwest quarter of said section.

By a survey made in 1917, conceded to be correct, it appears that the Flambeau river is a substantial distance to the south and west from the place indicated on the plat made from the government field notes and substantially all outside of such northeast quarter.    The space between the river as originally platted and as it actually exists includes about 173 acres.

The meander lines of the Flambeau river in said section, as found in the original field-notes, correspond, both as to courses and distances, substantially with those as found in the survey in 1917.

In the original four patents from the United States for this particular section the descriptions of the property therein contained were, so far as here material (abbreviated), as follows:

"The N. E. $\frac{1}{4}$ or lots 1, 2, and 3 of sec. 21, T. 39, R. 2 W., . . . containing 135.15 A. according to the official plat of the survey of said lands returned to the general land office by the surveyor general."

"The N. E. $\frac{1}{4}$ or lot 4 and the W. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ and the S. E. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$ of sec. 21, etc., containing 170.85 A. according to the official plat, etc. (same as above)."

"The S. W. ¼ of sec. 21, containing 160 A. according to, etc. (as above)."

"The S. E. ¼ of sec. 21, etc., containing 160 A. according, etc. (as above)."

In 1904 the J. L. Gates Land Company had acquired by mesne conveyances or agreements the title or the right to obtain title to all the land in section 21 involved in this situation, namely, all of the northeast quarter of said section 21 and so much outside of said quarter-section as would include the land covered by the Flambeau as it actually exists.

In 1904 negotiations were had on behalf of a Mrs. Tompkins for the purchase of that which was then designated as lot 1. The price was fixed at about $7.50 per acre, which at the assumed acreage of 65.48 A. amounted to $490, subsequently reduced to $400, as the purchase price.

Some question appeared to have been then raised, so far at least as the proposed purchaser was concerned, as to whether or not the Flambeau river did not, as a matter of fact, extend further to the south than as represented on the map, but it does not appear that such substantial difference as actually exists was known to any of the interested persons at that time.

Upon inquiry a specific request on her behalf was made in December, 1904, of the Land Company as to whether this lot 1 comprised all of the land north of the Flambeau river in the northeast quarter. It was answered by letter as follows:

"Will state lot 1 does comprise all of the land north of the Flambeau river in the *North East quarter* of section 21. I herewith inclose you a plat showing the land as it lies in relation to the river, and the lot contains 65.48 acres according to plat book."

Such plat was a copy of the one then recorded as above stated.

Correspondence was had between the Land Company and an attorney on behalf of defendant *Lull* with reference to

the completion of the transaction.   A warranty deed pre-
pared by the Land Company was returned and objected to
on the ground that it did not contain the description as made
in the land contract because limited in the offered deed to the
*northeast quarter* of the *northeast quarter* of section 21 or
lot 1.   It was then insisted that the warranty deed must con-
form to the description in the land contract with Mrs. Tomp-
kins.   This was subsequently done.  The description therein,
so far as here material, is set out in the opinion.

Defendants paid the consideration and accepted the deed
in 1905 and thereafter continued to pay taxes on the prop-
erty as described on the plat, namely, as lot 1.   Taxes were
paid by others claiming to own the property described as
lots 2, 3, and 4.

In 1910, by various mesne conveyances, the plaintiff be-
came the owner, so far as the apparent paper title was con-
cerned, of that which, according to the government plat,
would include all of the 173 acres between the river as actu-
ally existing and as platted by the government.  The plaintiff
now brings this action to quiet its title to such 173 acres.
The defendants assert title thereto by virtue of their prior
warranty deed of 1905 from the then owner of the entire
property, the Land Company.   Other issues were presented
as to tax deeds which need not be discussed.   The court
made findings of fact and then conclusions of law, which
are as follows:

"(1) That the boundary line between government lot 1
and government lots 2, 3, and 4, in said section 21, is a line
midway at all points between the meander lines of the Flam-
beau river as the same appear on the official government
plat of said lots, and that plaintiff is and at the time of the
commencement of this action was the owner in fee simple,
absolute, of all the lands in said section 21 lying south and
west of said boundary line, and that its right, title, and in-
terest in said premises, as such owner in fee simple, be de-
clared and established.

"(2) That the defendants and each of them and all per-

sons claiming under them, or any of them, subsequent to the filing of the notice of the pendency of this action be forever barred from all claim of right or title to any of the lands in said section 21 lying south and west of the aforesaid boundary line. .

"(3) That the plaintiff have and recover of the defendants its costs and disbursements herein."

From the judgment entered in accordance therewith defendants *Lull* and *Willard* have appealed.

For the appellants there was a brief by *Bird, Okoneski & Puchner* of Wausau, and oral argument by *Claire B. Bird.*

For the respondent the cause was submitted on the brief of *Bundy, Beach & Holland* of Eau Claire.

ESCHWEILER, J.    This sketch helps to illustrate the situation:

Defendants' assertion of title to the 173 acres found to lie between the meandered lines in the field-notes and reproduced in the plat of 1856, and the river as actually existing, is based upon the language in the warranty deed to it in 1905 by the then owner of the property, the Land Company, and reading as follows:

"Lot 1 in section 21, *being all the land in said section north of the Flambeau river* and containing 65.48 acres more or less according to the United States government survey."

Upon this language and the covenant of warranty in said deed defendants assert that all the land in section 21 which is lying north of the Flambeau river as it actually exists is theirs, and that neither the Land Company nor any subsequent grantee from it can be heard to assert to the contrary. Defendants further claim that, if such conveyance should not be held to so give them title to all of such tract, they at least take title to the entire northeast quarter.

The first of these positions so taken is based upon the general and well recognized rule that the courses and distances of meander lines in the government survey, subsequently incorporated in the plat made from such field-notes, are not controlling as to the boundaries of land conveyed with express reference to a body of water or other natural boundary along which such meander lines are run. That the meander lines are construed to be primarily for the purpose of measuring the quantity of land for which the United States government is to receive the purchase price, rather than as exact surface limitations, and that therefore such meander lines yield to the specified actual natural lines of boundary. *Brown v. Dunn,* 135 Wis. 374, 377, 115 N. W. 1097. To such conceded general rule no further authorities need be cited. Except and unless the situation presents one or more of the recognized exceptions to such general rule, defendants' present contention must be upheld.

But by a well established exception to this general rule,

however, the defendants are prevented from now asserting title to any land south or west of the two quarter-lines surrounding this quarter-section. The meander lines of the field-notes and the plat on the south and west of the tract of land described as lot 1 on the plat and in the conveyance to the defendants serve at least as a starting point from which a person claiming under such deed may ordinarily proceed to search for the designated natural monuments as boundary lines. When in such search, however, starting from such meander lines, he reaches the nearest governmental subdivision line, there he is bound to stop though such natural boundary is not yet reached.

Owing to the position of the meander lines of the river as indicated on the plat with reference to the center of this particular northeast quarter, this presently considered exception to the general rule requires that the governmental subdivision lines should in their turn control over the right of the claimant to move on beyond the meander line to the natural boundaries. That is to say, the right he may exercise to proceed beyond the meander line must now yield to the superior weight and dignity to be given to the governmental subdivision lines beyond which the government plat or meandered lines did not carry the natural boundary. This, therefore, would in any event halt the defendants at the two quarter-lines. This exception is well established, as the following list of the many authorities that might be cited demonstrates: *Underwood v. Smith,* 109 Wis. 334, 341, 85 N. W. 384; *Mendota Club v. Anderson,* 101 Wis. 479, 490, 78 N. W. 185; *Lally v. Rossman,* 82 Wis. 147, 149, 51 N. W. 1132; *Martin v. Carlin,* 19 Wis. 454, 456; 9 Corp. Jur. 191.

On the important question still remaining, as to whether the defendants, under their conveyance, can claim beyond that which was designated, described, and limited on the government plat as lot 1, or at least beyond and up to the two quarter-lines, we are satisfied that the trial court was

correct in limiting, as he did, the effect of this conveyance to what was so platted as lot 1 of substantially 65.48 acres, and that the meander lines as given in the field-notes and in the plat limit the lines of the actual grant on the south and west.

All the general rules as to the greater or lesser degree of weight and control to be given to one form of description as to the property conveyed as compared with another are after all but helps to be used in determining the essential purpose of the construction of such an instrument, namely, to discover what was the real intent of the parties, because as to this form of contract as well as all others it is not for the courts to make a new or different contract than that which the parties themselves intended to make, but merely to ascertain, under general and recognized rules of construction, what the contract really is. 4 Ruling Case Law, 106; 9 Corp. Jur. 152. None of these general rules of construction, therefore, are absolute and invariably controlling. It is the real intention of the parties, to be gathered from the entire writing, and, when necessary, by resort to the circumstances surrounding the transaction, that must ultimately control. *Security L. & E. Co. v. Burns,* 193 U. S. 167, 179, 24 Sup. Ct. 425 (affirming 87 Minn. 97, 91 N. W. 304); *Hall v. Eaton,* 139 Mass. 217, 221, 29 N. E. 660; 4 Ruling Case Law, 106; 9 Corp. Jur. 152, 174.

A construction of the entire conveyance satisfies us that the meander lines as designated on the plat and in the original field-notes must be held to be the actual boundary of the land conveyed, for the following reasons:

The conveyance contains an express reference to this particular governmental survey;

It contains an express reference to a particular lot platted and represented on such survey;

It contains a specific designation as to the acreage contained.

The difference between the designated acreage in the con-

veyance of 65.48 acres claimed, and the 160 acres claimed if the boundary should be limited by the two quarter-lines, or the 173 acres if to the actual river, is in either event so grossly excessive as to indicate, in connection with the purchase price, that neither of the larger quantities could have been within the intention of the parties.

Express reference to the United States government survey makes the plat as recorded in pursuance to the field-notes, if not a substantial part of the deed, at least an appropriate source of reference in so ascertaining the real intention. *Whitney v. Detroit L. Co.* 78 Wis. 240, 247, 47 N. W. 425; *Ainsa v. U. S.* 161 U. S. 208, 229, 16 Sup. Ct. 544; 4 Ruling Case Law, 117, 119. While such plat does indicate the existence of a river where the meander lines were apparently run, yet neither the assertion of the apparent existence of the river as being there by such lines nor the granting of a patent in accordance therewith does more than, *prima facie* at least, imply the existence of such body of water, and does not confer, of itself, any riparian rights. *Producers Oil Co. v. Hanzen,* 238 U. S. 325, 339, 35 Sup. Ct. 755. As was there held, if the facts and circumstances surrounding the transaction disclose an intention to limit the grant to actual traverse lines, such, rather than the actual natural monuments, will control.

The reference to specific acreage may be, and generally is, required to yield to the result of actual measurement according to plainly defined lines or natural monuments, but nevertheless the question of quantity may be proper for consideration and in some instances have a controlling weight. As was said in *Chapman & Dewey L. Co. v. St. Francis L. Dist.* 232 U. S. 186, 197, 34 Sup. Ct. 297, a specification of 13,815 acres is hardly consistent with the claimed purpose that by such conveyance there was intended to be conveyed 22,000 acres. See, also, 4 Ruling Case Law, 109.

The case of *McEvoy v. Loyd,* 31 Wis. 142, relied upon by defendants, in nowise affects this rule. It was there

held that a reference to a particular government survey in the conveyance would not be limited by the specified acreage, but would carry with it any actual surplus. The situation in that case was expressly stated to be the common one often presented of such governmental subdivisions exceeding or falling short of the requisite number of acres. Page 145. No such situation, of course, is here presented, and the general language in that case cannot control here.

Again, in connection with the designated quantity of 65.48 acres is used the term "more or less." Such term covers an excess or deficit that is within a reasonable limit, the risk as to which is to be assumed by the respective parties. It does not cover a situation where it is evident there is a gross mistake. *Frey v. Etzel,* 160 Wis. 311, 314, 151 N. W. 807.

Finally, the discrepancy is so gross between the quantity specified and that claimed by defendants as to clearly indicate the existence of a mistake in the reference to the actual river as a boundary, and therefore warrants the conclusion that the meander lines on the plat, referred to in the deed by its express recognition of the survey, are controlling as to the boundary. *Lee Wilson & Co. v. U. S.* 245 U. S. 24, 29, 38 Sup. Ct. 21; *Security L. & E. Co. v. Burns,* 193 U. S. 167, 182, 24 Sup. Ct. 425; *Barnhart v. Ehrhart,* 33 Oreg. 274, 54 Pac. 195; *Barringer v. Davis,* 141 Iowa, 419, 428, 120 N. W. 65; 4 Ruling Case Law, 98.

This disposition of the case makes it unnecessary to consider the other questions discussed in the briefs.

*By the Court.*—Judgment affirmed.