BAACKES, Appellant, vs. BLAIR, Respondent.

*October 14—November 10, 1936.*

For the appellant there was a brief by *Jonas Radcliffe* of Eagle River, attorney, and *O'Melia & Kaye* of Rhinelander of counsel, and oral argument by *Walter F. Kaye*.

*C. B. Dillett* of Shawano, for the respondent.

WICKHEM, J. The facts in this case are not in dispute. Plaintiff is the owner in fee simple of lot 7, section 29, township 40, range 8 east, Vilas county, Wisconsin, a government fractional lot shown on the original government plat to have as its entire eastern boundary the shores of Lake Content. Defendant is the owner in fee simple of government lot 8 in the same section, shown on the original govern-

ment plat to have as approximately the west half of its northern boundary the regular subdivisional or eighth line, and as the east half of the north boundary the shores of Lake Content. The situation, as indicated by the government survey, is set forth in Figure 1. In fact, however, the shores of Lake Content were erroneously surveyed in the vicinity of lots 7 and 8, and, as indicated in Figure 2, no ·

Fig. 1.

Fig. 2.

part of Lake Content would touch lot 8 if its northern boundary were to be extended straight east along the eighth.

line. The land in dispute lies between the eastern half of the eighth line, which in part forms the northern boundary of lot 8 and the shore of Lake Content immediately to the north. The trial court held that plaintiff was not entitled to this disputed strip of land; that the lake shore was shown by the government plat as a natural fixed landmark in the northern boundary of government lot 8; that the plat indicates that the northern boundary of this lot touches the shore of the lake about midway between the eastern and western boundaries of the lot. It is the contention of plaintiff that she is entitled to recover, for the reasons that the owner of a government subdivisional lot represented in the original plat or survey as bounded in part by water may, upon discovery of an error in the survey, extend his search for a water boundary only to the next subdivisional line; that in this case defendant may not extend his search beyond the eighth line that in part bounds his lot upon the north; that the rectangular method of surveying was chosen by the government and has been consistently maintained and should govern wherever it is applicable; that applying it to this case, it is possible by extending in an easterly direction the eighth line, which according to the government plat constitutes the northeastern boundary of the land, to complete a conventional rectangular forty-acre quarter-quarter section, and that the area thus inclosed would be substantially equal to that estimated in the government survey. It is contended that the court's judgment does violence to the above-mentioned rules.

It seems to us that the starting point in the solution in this case is not that selected by plaintiff. The fundamental inquiry is, What was the government's intent in making the original grant of lot 8? When ascertained, this intent controls. *Blatchford v. Voss,* 197 Wis. 461, 219 N. W. 100, 222 N. W. 804; *Wisconsin Realty Co. v. Lull,* 177 Wis. 53, 187 N. W. 978; *Mitchell v. Smale,* 140 U. S. 406, 11 Sup.

Ct. 819, 35 L. Ed. 442; *Lee Wilson & Co. v. U. S.* 245 U. S. 24, 38 Sup. Ct. 21, 62 L. Ed. 128.

Whatever may have been the effect of cases in this state prior to the *Blatchford Case, supra,* that case makes it plain that the rules contended for by defendant are merely factors that may properly be considered as bearing upon the intention of the government, and that they have no force or effect as rules of law. Particularly is this held with respect to the asserted rule that an intercepting governmental subdivision is a complete bar to a further search for an actual water boundary by the holder of a patent title from the United States government in situations where such a water boundary is shown by the original plat or survey. It was argued in the *Blatchford Case* that this court in *Whitney v. Detroit Lumber Co.* 78 Wis. 240, 47 N. W. 425, had established this as a rule of law. To the extent that this was the effect of the *Whitney Case,* it was modified by the *Blatchford Case.* Hence, the thing to be determined is the intention of the government in making the original grant. The preference of the government for the rectangular method of surveying, the preference for construction that will not carry the search for a water boundary beyond a subdivisional line, and all other matters bearing upon the intention of the government, may properly be considered. In this case the factors that indicate an intention on the part of the government to convey to the predecessors in title the land here in dispute are as follows:

The original survey represents a portion of the north boundary of defendant's land to be lake shore. All of this water boundary lies north of the eighth line, which forms the balance of the northern boundary, and hence it is not literally necessary for defendant to cross a subdivisional line to reach a water boundary. There was no fraud or gross error in the survey, and the lake shore is not so remote from the premises

as to lead to the inference that there was no intention to make it the boundary of the premises. Plaintiff's construction would wholly exclude defendant from a water boundary. This factor was considered in the *Blatchford Case* to be an important consideration. In that case the court denied plaintiff the right to extend his search for water past a subdivisional line, and one of the decisive considerations was the fact that plaintiff would have a water boundary without so extending the search. In the *Blatchford Case*, due to errors in the original survey, the plaintiff had actually less water frontage than the survey called for, and proposed to cross a subdivisional line to search for a greater shore line or water boundary. The judgment precluding him from crossing the subdivisional line in the course of this search did not result in his having no water boundary. The court there said:

"In disposing of the present problem we are not met with the situation presented in most if not all of the many decisions concerning water boundaries where, when the lines of the original plat (other than the meanders) are applied in survey of the actual ground, there is a result showing no water frontage at all; for here plaintiff's lot 7 has water frontage by actual survey as well as by the original plat. The present survey does not deprive him of *a* frontage on the lake, but restricts him to less than originally shown; but he, in effect, is insisting that he is entitled to as much actual water frontage as was first indicated. Such a claim, if fully and logically carried out, would permit him to take a large piece of lot 8, as indicated on the sketches *supra,* in order to complete his claimed shore line, in as much as the indentation by the bay was much more to the south on the original plat than it is on the actual survey."

Here plaintiff's contention would entirely keep defendant from any frontage on the lake. While it is contended that the result here is inconsistent with the evident intention of the government to give the owner of lot 7 a water boundary along the entire east side of this lot, we think that an exami-

nation of the map will demonstrate the unsoundness of this argument. It was the evident intention to give the owner of lot 7 a water boundary line down to the southern tip of the small bay created by the lake in that vicinity, and to give to the owner of lot 8 the land lying immediately to the south of the shore line running in a general northeasterly direction therefrom. It is contended that lot 8 could have been made a complete rectangular forty, that the preference of the government is for such a survey, and that only the error in the survey caused a water boundary to be assigned to lot 8. We think this contention is not sound in view of all the circumstances. Such a comment is even more applicable to lots 6 and 7. While lot 8 on the basis of the erroneous survey could not have been made into a rectangular quarter-quarter, lots 6 and 7 could have been so made. Due, however, to the nearness of the lake to any artificial sudivision line that could be surveyed as the eastern boundary of these lots, it was evidently determined to add to the lots the small strip of land between such boundary and the lake, and to give these lots a water boundary. The purpose to attach to lot 8 the small strip of land here in dispute and to give this lot a water boundary seems sufficiently clear. Adding this strip to lot 8 gives compactness to that lot. Adding it to lot 7 leaves that lot irregular in shape and makes the lake not merely an eastern but a part of its northern boundary as well.

Considering all of the applicable factors, we are of the view that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.