WEAVER and others, Appellants, v. KNUDSON and others, Respondents.*

*March 6—March 31, 1964.*

* Motion for rehearing denied, with costs, on June 2, 1964.

For the appellants there was a brief by *Schmitt, Wurster & Tinglum* of Merrill, and oral argument by *Sverre Tinglum.*

For the respondents there was a brief by *O'Melia & Kaye* of Rhinelander, and oral argument by *Walter F. Kaye.*

HALLOWS, J.   The plaintiffs claim the disputed land is part of government lot 7 which was conveyed by government patent in 1900 to one Herbert C. Miller and by various conveyances transferred to the plaintiffs. The patent conveyed government lot 7 of section 15, township 34 N., R. 8

E., "according to the official plat of the survey of the said lands, returned to the General Land Office by the Surveyor General." Printed herewith is diagram No. 1 showing the

DIAGRAM No. 1.

official plat of survey referred to in the patent. Lot 7 as platted is bounded on the north by a meandered lake. All the other boundaries are indicated by straight lines which correspond to the internal subdivision lines of section 15 and correspond with what would be the eastern, southern, and western boundaries of the east one half of the northwest quarter, section 15.

There exists, in fact, over the lower part of lot 7 a non-meandered lake which cuts across the eastern and western boundaries of lot 7 but leaves a small triangular piece of land 2.10 acres in the southwest corner of the lot which is the land in dispute. This lake, known as Long lake, is in excess of 25 acres and should have been shown or indicated by a

meander line on the plat. Reproduced herewith is diagram
No. 2 which shows lot 7 with a shoreline of Long lake on

the south and the disputed area. According to the govern-
ment plat, lot 7 contained 61.78 acres. The actual acreage
above the water, however, is 54.66 acres. The defendants
assert their claim to the disputed area upon conveyances of
the owner of government lot 6 to the west of lot 7.

The trial court construed the patent conveying government lot 7 as not including the disputed area on the grounds that under the circumstances of the nonmeandered Long lake the government did not intend to convey the disputed area as it would result in two unconnected parcels of land being conveyed by the patent and because under the system for the survey of public lands set forth in Title 43, U. S. Code, secs. 752 and 753, the east and west boundary lines of the government lot should have stopped at the shoreline of Long lake and such shoreline should have been the southern boundary of lot 7. This result is probably what would have taken place if the surveyor had meandered Long lake. However, the question is whether government lot 7 at the time the patent was issued was intended to include all the land within its boundaries as shown on the plat.

We do not agree with the plaintiffs' argument that the boundaries of government lot 7 are created by the plat. True, an original government survey creates boundaries but in such cases the lines are run and determined on the surface of the earth for that purpose. In this case while the section was surveyed, the boundaries of lot 7 were administratively drawn in the General Land Office and do not represent lines actually run and surveyed.

However, the patent to government lot 7 with its reference to the plat is clear and unambiguous on its face in conveying lot 7 according to the official plat. All navigable bodies of water are required to be segregated from the public lands at mean high-water elevation. The traverse of the margin of a permanent natural body of water is termed a meander line. Manual of Surveying Instructions, Bureau of Land Management (1947), p. 230, sec. 226. Where a body of water is meandered, such meander line does not generally determine the actual boundary of the lot but may if there is fraud or if the intention can be shown the meandered line is to be a

boundary. *Wisconsin Realty Co. v. Lull* (1922), 177 Wis. 53; 187 N. W. 978; *Schultz v. Winther* (1960), 10 Wis. (2d) 1, 101 N. W. (2d) 631. The general rule is that meandered lines in the original surveys of fractional portions of public lands were not run as boundaries but to define the sinuosities of the banks of the water and as a means of ascertaining the quantity of land embraced in the fraction subject to sale, and which is to be paid for by the purchaser. *Railroad Co. v. Schurmeir* (1868), 74 U. S. (7 Wall.) 272, 286, 19 L. Ed. 74; Manual of Surveying Instructions, Bureau of Land Management (1947), p. 230, sec. 226; Clark, Surveying and Boundaries (3d ed.), p. 257, sec. 239. The failure to meander Long lake resulted in the plaintiffs' predecessor paying for more acreage than he actually received. This is necessarily true because whether the lake was meandered or not, the title to the bed of the navigable Long lake did not pass by the patent or affect the right or title of the state to the bed of the lake. *Angelo v. Railroad Comm.* (1928), 194 Wis. 543, 217 N. W. 570; *Mendota Club v. Anderson* (1899), 101 Wis. 479, 78 N. W. 185.

While the holdings in *Blatchford v. Voss* (1929), 197 Wis. 461, 219 N. W. 100, and *Baackes v. Blair* (1936), 223 Wis. 83, 269 N. W. 650, are not decisive of this case, both opinions stand for the proposition that the intent of the government must be ascertained in construing the original patent. Both these cases involved a determination of boundaries to government lots, part of which boundaries were composed of meandered lakes. In the *Voss Case,* the court expressly did not decide whether the government lot could be composed of two parcels of land entirely separated by water. However, we find nothing unreasonable in such a result.

It is true that rules of survey of public lands provide in Title 43, U. S. Code, sec. 752, that boundaries and contents of sections, half sections, and quarter sections, where such

boundaries have not been actually run and marked shall be ascertained by running straight lines from established corners to opposite corresponding corners, but in fractional townships where no opposite corresponding corners have been or can be fixed the boundary lines shall be ascertained by running from the established corners to the watercourse. Under sec. 751, Seventh, "Every surveyor shall note in his field book the true situations of all . . . watercourses over which the line he runs may pass; and also the quality of the lands." However, we do not see how it follows that the boundaries of lot 7 should now be reconstructed to express how we think lot 7 would have been drawn on the plat. The intent we search for in the patent is the intent the government had at that time, not what it would have had if no mistake had been made. It has been held when an area through fraud or mistake is meandered as a body of water where no such body of water exists, the plat controlled and the meandered area did not pass. See *Lee Wilson & Co. v. United States* (1917), 245 U. S. 24, 38 Sup. Ct. 21, 62 L. Ed. 128. Likewise, the plat ought to control here for the purpose of determining what land was intended to be conveyed.

We believe this case to be ruled by *Munro v. State* (1929), 200 Wis. 107, 227 N. W. 394. In that case the plaintiff claimed two islands situated in a nonmeandered lake which fell within the described quarter sections of the government patent. The state contended its title to the navigable lake carried with it the title to the islands but the court held the islands were not a part of the bed of the lake and in the case of a patent involving a nonmeandered lake, the land conveyed by the patent did not stop at the water's edge but included all the land within the description but excluded the water. We see no difference in principle between an island in a nonmeandered lake and land on the other side of a nonmeandered lake when that land is within the description in

the patent, whether that description is by government sections or fractions thereof or by reference to an official plat of survey.

We must hold that the government intended to convey by the patent all the land within the plat designated as lot 7.

*By the Court.*—Judgment reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

* Motion for rehearing denied, with costs, on June 30, 1964.