STATE COMMISSIONERS OF BOARD OF PUBLIC LANDS, Appellant, v. THIEL, and others, Respondents.

*No. 75–804. Argued January 3, 1978.—*
*Decided February 7, 1978.*
(Also reported in 262 N.W.2d 522.)

For the appellant there were briefs by *Bronson C. La Follette,* attorney general, and *John E. Kofron,* as-

sistant attorney general, with oral argument by *Patrick Walsh,* assistant attorney general.

For the respondents there was a brief by *Forest W. Rodd, James A. Johnson* and *Korth, Rodd, Sommer & Mouw, S. C.,* and oral argument by *Forest W. Rodd,* all of Rhinelander.

CONNOR T. HANSEN, J.   We refer to two diagrams in setting forth the facts. Figure 1 depicts the area in question as shown by the original plat of survey, apparently done in 1864. The State of Wisconsin holds title to Government Lot No. 2 in Section 21 of Township 36 North, Range 8 East. This area is indicated by hatched lines on Figure 1. The defendants hold title to the area indicated in dots, which will be referred to as

FIGURE 1

SHOWING MEANDERED BOUNDARIES OF LAKE EMMA

 OWNED BY STATE

 OWNED BY DEFENDANTS

Lot No. 8.[1] The defendants, 12 in number, are owners of parcels of land in Government Lot 8 and fronting on Lake Emma. They and their predecessors in title have owned and occupied the properties for many years. The pleadings allege the improvements on the respective properties have a total value of approximately $300,000.

Lot 2 and Lot 8 border on a meandered body of water known as Lake Emma. The actual shoreline of Lake Emma, shown in Figure 2 below, and established by a 1939 survey, differs substantially from the meanders shown on the original official plat of survey. (Figure 1) As indicated by Figure 2, the lake extends farther to the north and east than depicted in the original survey.

As a result of this discrepancy, most of the area platted as Lot 2 is beneath the waters of Lake Emma. Two small triangular portions of the original lot remain above water. These parcels are located in the northeast and southeast corners of Lot 2 as originally platted, and are shown in Figure 2 as parcels A and B, respectively. In addition, Lot 8 is larger than indicated by the original survery. The state apparently agrees that the defendants are entitled to ownership of parcel D on Figure 2.[2]

---

[1] The area owned by the defendants includes a small parcel of land (approximately 380' by 270') outside of and adjoining the northwest corner of Lot No. 8 as shown on the original plat of survey. The deeds to this small parcel describe it as part of Lot 8, and the parties treat it as such in their briefs. This apparent discrepancy is not clearly explained by the record. However, an affidavit of one of the defendants refers to certain lands which were adjudged by the circuit court for Oneida county, by judgment entered January 5, 1931, to be the property of the owners of Lot 8. It is not clear whether that judgment concerned this parcel. In any event the defendants' title to this parcel is not challenged in these proceedings.

[2] In its complaint, the state claimed ". . . the entire unplatted area adjacent [to Lot 2 as platted] that lies between the original meander . . . and the actual shoreline . . ." The defendants ap-

FIGURE 2

SHOWING MEANDERED BOUNDARIES AND ACTUAL SHORELINE OF
LAKE EMMA

PARCEL A - OWNED BY STATE

PARCEL B ⎫
          ⎬ LANDS IN DISPUTE
PARCEL C ⎭

PARCEL D

OWNED BY DEFENDANTS

parently consider this claim to embrace parcel D on Figure 2.
However, the state does not include parcel D in its sketch of the
disputed lands, and acknowledges that Lot 8 is actually larger

The controversy concerns ownership of parcels B and C, which together constitute somewhat less than ten acres. The defendants claim title to this land on the basis of the rule that the boundaries of lands adjoining meandered waters are determined not by the meander lines, but by the actual shoreline of the body of water. This rule limits the state to ownership of parcel A, the defendants argue, because the state's land runs southward only as far as the shore of Lake Emma, and does not continue across the lake to parcels B or C; the defendants thus claim parcels B and C on the theory that their lands in Lot 8 extend westward to the lakeshore.

The state contends that this case is unique, in that the size of Lot 2 was grossly overstated by the original survey, and that under these circumstances an exception should be made to the general rule, and the boundaries as shown on original plat should control. The state maintains that at the time the original plat of survey was drawn the governmental intent was to convey by the patent all the upland within the area designated as Government Lot 2, including parcel B, regardless of the fact that parcel A and parcel B are on opposite sides of the lake.

The state further insists that ownership of parcel B would entitle the state to a proportionate share of parcel C under sec. 30.10 (4) (b), Stats.[3]

The case presents the following issues:

1. On the facts presented, should this court recognize an exception to the general rule regarding boundaries along meandered bodies of water, so as to include with-

than shown on the original survey. Therefore, for the purposes of this opinion, we consider the defendants to be the owners of parcel D.

[3] Sec. 30.10(4)(b), Stats., provides in part:

". . . If the proper claims of adjacent owners of riparian lots of lands between meander and actual shore lines conflict, each shall have his proportion of such shorelands."

in Government Lot 2 a triangular parcel (parcel B) in the southeast corner of Lot 2 as platted?

2. Is the state an "adjacent landowner" having a "proper claim" for purposes of sec. 30.10 (4) (b), Stats., and therefore entitled to claim a portion of lands between the borders of Lot 2 as originally platted and the actual shore of Lake Emma (parcel C)?

3. Did the trial court abuse its discretion in granting summary judgment?

*PARCEL B.*

The state argues that under the circumstances of this case, Government Lot 2 must be considered to include not only the small triangular parcel (A) in the northeast corner of the lot as platted, but also the small triangular parcel (B) in the southeastern corner of the original lot. As the state recognizes, this position is contrary to the general rule regarding the boundaries of lots adjacent to meandered bodies of water.

" 'The general rule is that meander lines are not run as boundaries, but to define the sinuosities of the banks of the stream or other body of water, and as a means of ascertaining the quantity of land embraced in the survey, the stream, or other body of water, and not the meander line as actually run on the ground, being the boundary.' Manual of Surveying Instructions (1947), Bureau of Land Management, p. 231, sec. 226; Clark, Surveying and Boundaries (3d ed.) p. 257, sec. 239; 1 Patton, Titles (2d ed.) p. 297, sec. 117; *Railroad Co. v. Schurmeir* (1868), 74 U.S. 272, 286, 19 L. Ed. 74" *Schultz v. Winther,* 10 Wis.2d 1, 7, 101 N.W.2d 631 (1960). *Accord: Wisconsin Realty Co. v. Lull,* 177 Wis. 53, 187 N.W. 978 (1922); *Weaver v. Knudson,* 23 Wis.2d 426, 430, 431, 127 N.W.2d 217 (1964).

Under this rule, an owner of land bordering a meandered lake takes only to the shoreline; the boundary lines of his lot stop at the water's edge. *See: Weaver v. Knud-*

*son, supra,* at 431; *Munro v. State,* 200 Wis. 107, 109, 110, 227 N.W. 394 (1929).

The state seems to concede that application of this rule in the instant case would limit Lot 2 to the triangular parcel (A) in the northeast corner of the original lot. Because the lot was originally platted as being bounded on the south by the northern shore of the lake, the actual boundaries of the lot would be determined by extending boundaries westward and southward from the northeast corner of the lot. These lines would stop at the water's edge, and the lot would be limited to parcel A.

However, the state argues that the general rule is inapplicable and that the meander lines indicated on the plat of survey should be considered to mark the southern boundary of the lot. This argument rests on the alternative propositions that the instant survey was "grossly erroneous," and therefore within a recognized exception to the general rule; that other circumstances establish a governmental intent to make the meander lines the actual boundary of Lots 2 and 8; and that a new exception to the general rule should be recognized to accommodate what the state considers to be the unique circumstances presented here.

The state points out that the intent of the government in making the original grant is always the controlling consideration in determining the boundaries of the grant.[4] *Weaver v. Knudson, supra,* at 430; *Baackes*

---

[4] Some of the factors bearing on governmental intent include: ". . . The area of land between the meander line and the actual shore; whether the error in the meander line was sufficient so that the meander line would constitute the boundary; the type and comparative value of the land at the time; the preference for regularly shaped parcels of land; and consequences such as depriving one claimant of all lake frontage." *Kind v. Vilas County,* 56 Wis.2d 269, 277, *fn.* 2, 201 N.W.2d 881 (1972).

*v. Blair,* 223 Wis. 83, 87, 269 N. W. 650 (1936) ; *Blatchford v. Voss,* 197 Wis. 461, 469, 219 N.W. 100, 222 N.W. 804 (1929) ; *Wisconsin Realty Co. v. Lull, supra,* 61. Despite the rule that a meander line does not generally determine the boundary of a lot, the meander lines will be considered boundaries where a governmental intention to make them boundaries is shown. *Cf. Weaver v. Knudson, supra,* at 430. *Producers Oil Co. v. Hanzen,* 238 U.S. 325, 339, 35 Sup. Ct. 755, 59 L. Ed. 1330 (1915). The state argues that such an intention is demonstrated here.

Where erroneous meander lines result in such substantial additional acreage between the meander line and the shoreline that the survey constitutes a "gross error," an exception is made to the general rule, and the meander line is held to define the boundary of a lot. This exception is founded on the fact that the acreage, and thus the original purchase price, of such lands were determined with reference to the original plat and the meander lines. Thus where use of the actual shoreline as a boundary would produce an acreage far in excess of that used in computing the sale price of the land, the survey will be held to be a constructive fraud upon the government, and the lot will extend only to the meander line, on the theory that the government did not intend to convey the substantial parcel of omitted land between the meander line and the shore. *Schultz v. Winther, supra,* 8–13; Clark, *Surveying and Boundaries* (3d ed.), sec. 627, pp. 731, 733.

The state contends that this exception is applicable here. The meander lines purporting to indicate the shoreline of Lake Emma are grossly erroneous, it is argued, so that the actual shoreline should not be considered a boundary. Rather, the state would define Lot 2 as consisting of all upland within the area designated

as Lot 2 on the original plat. On this theory, Lot 2 would consist of the two triangular parcels, A and B, on opposite sides of the lake.

In *Brothertown Realty Corp. v. Reedal*, 200 Wis. 465, 277 N.W. 390 (1930), this court rejected the argument that in evaluating a survey the court should consider only the effect of the surveyor's error on a particular lot. The court held that such an approach was inappropriate where a continuous meander line had omitted a contiguous tract of 103.28 acres of high land. Viewing the survey as a whole, the court found it impossible to believe the meander line had actually been run, and concluded that the survey constituted a constructive fraud on the government.

Similarly, it is obvious that the original survey in the instant case was seriously in error. The state asserts, and the defendants do not deny, that some 110 acres designated to be within lots riparian to what is now known as Lake Emma are actually under water. In addition, it appears that substantial parcels were omitted from Lots 5 and 6. Of the fifty-two acres designated for Lot 2, 48 acres are alleged to be under water.

Nevertheless, there is a fundamental objection to extending the exception to the instant case. As the state repeatedly emphasizes, this case is unusual. The principle that grossly erroneous meander lines are to be treated as boundaries was developed in response to surveys which erroneously *omitted* large areas of high land.

In such cases the exception limits the size of the lot. Because the meander lines are used in determining the size of the lot and its purchase price, a gross understatement of the size of the lot would result in a purchase price far below its actual value. In such a case, a grossly erroneous survey would constitute a constructive fraud upon the federal government. Indeed, there could have been substantial opportunity for actual fraud. The ex-

ception therefore allows the government to treat the meander line as the boundary in such cases, and to sell the omitted land between the meander line and the shoreline under a new patent.

In the instant case, however, the erroneous survey had an opposite effect; the original plat of survey grossly *overstated* the size of the lot. This court has never applied the exception, or treated meander lines as boundaries, in similar circumstances. Nor has our research identified any such case in other jurisdictions. Because the exception was developed to accommodate a different factual situation, and in response to different policy concerns, it should not be arbitrarily extended to the instant case.

Where a grossly erroneous survey has omitted land, resort to the meander lines as boundaries is a ready and appropriate solution. The purchaser then receives the parcel indicated on the original plat of survey, and the apparent intent of the parties is preserved. However, where the erroneous meander overstates the size of a lot, as is true here, this solution is not satisfactory.

In the present case the meander lines differ so greatly from the actual location of the shoreline of Lake Emma that the area designated as Lot 2, which was intended to be on the northern shore of the lake, actually includes a small parcel B on the southeast or opposite side of the lake. For this reason, use of the boundaries indicated on the plat, including the meander line, would enlarge Lot 2.

The state contends that the arrangement of the lots on the original plat indicates an intent that Lot 2 extend southward across section subdivision lines, but that Lot 8 not cross such lines. The state also asserts that the government intended to convey lots of approximately equal size and intended to convey approximately fifty-two acres in Lot 2, as indicated by the plat.

■

Such a reference to specific acreage may be a proper consideration, and may in some instances have a controlling weight. *Wisconsin Realty Co. v. Lull, supra,* 62. However, the body of water will generally control as a call of the survey over the acreage designated in the plat. *Wisconsin Realty Co. v. Lull, supra; Brown v. Dunn,* 135 Wis. 374, 377, 115 N.W. 1097 (1908). The fact is that in the instant case there is absolutely nothing to indicate any intention to have Lot 2 include land located on the opposite side of Lake Emma.

The approach advocated by the state would result in a lot composed of two small, irregular parcels on opposite sides of Lake Emma. Meander lines have never been used so as to reach across a body of water and take in a parcel on the opposite shore. Nor can it be maintained that the government intended to convey land on the southeast shore of the lake when it patented Lot 2.

■

Although it is not impossible for a lot to be composed of two parcels separated by a body of water, *Kind v. Vilas County, supra,* 274; *Weaver v. Knudson, supra,* at 431, such a configuration is not to be preferred. Parcels A and B are disconnected, irregularly shaped and unrelated. There is a distinct preference for compact, regularly shaped parcels. *Kind v. Vilas County, supra,* at 277, *fn.* 2; *Cf. Baackes v. Blair, supra,* 87, 89.

■

The rectangular method of surveying and platting is preferred by the government and has been consistently maintained. Only when rectangular units, particularly the forty-acre quarter-quarter section could not be used, were fractional subdivisions created. It may therefore be assumed, when boundaries must be modified to reflect actual water boundaries, that the original purpose was to vary as little as practicable from the established

practice. *Blatchford v. Voss, supra,* at 469, 470; *Cf. Baackes v. Blair, supra,* at 87.

Title 43, U. S. Code, sec. 752, pp. 77, 78, provides in part that where boundary lines of subdivisions of sections of public lands have not actually been run and marked, they shall be ascertained:

". . . by running straight lines from the established corners to the opposite corresponding corners; but in those portions of the fractional townships *where no such opposite corresponding corners have been or can be fixed, the boundary lines shall be ascertained by running from the established corners due north and south or east and west lines, as the case may be, to the watercourse,* Indian boundary line, or other external boundary of such fractional township." (Emphasis added.)

This court has observed that where land adjoins a meandered lake, the system of surveying established by this statute and by 43 U.S. Code, sec. 753, would appear to require the boundary lines of a lot to stop at the shoreline, rather than continuing across the water to a second unconnected parcel. *Weaver v. Knudson, supra,* at 430.

There is nothing in the record to support a finding that the government intended to patent two small parcels of land on the opposite side of Lake Emma as Government Lot 2.

The state further argues that because the facts in the present case are unusual, decisions of this court involving *non*-meandered lakes are apposite. In such cases, this court has held that conveyance by patent of a government lot passes title to all upland in the designated lot, including unconnected parcels cut off from the remainder of the lot by a non-meandered lake. *Weaver v. Knudson, supra, Munro v. State, supra.* However, these decisions have consistently emphasized the distinction between meandered and non-meandered lakes. A

patentee of land bordering on a meandered lake takes only to the water's edge, and the land is conveyed by lots. In contrast, where non-meandered bodies of water are involved, no water is considered and no water's edge is involved. The land is conveyed by ordinary governmental section descriptions, and all land within those descriptions passes. *Munro v. State, supra,* at 109, 110.

The state does not clearly set forth reasons why the distinction between meandered and non-meandered bodies of water should be disregarded in this case, nor does it state why it believes the rules applicable to non-meandered lakes are applicable here. The argument appears to be that whichever rules will afford the relief the state desires should be applied. Even if this argument were convincing, it is not clear why the general rules should be modified to enlarge Lot 2 by taking lands which would otherwise go to Lot 8. We therefore conclude that Lot 2 does not include parcel B.

*SECTION 30.10(4)(b), STATS.*

The state argues that it is entitled to a portion of the disputed lands by virtue of sec. 30.10(4)(b), Stats. (*See: fn. 3.*)

The statute is applicable only where there are several "adjacent owners" having "proper claims" to the disputed lands. To receive the benefit of this statute the state's lot must be adjacent to the disputed lands. *Kind v. Vilas County, supra,* at 274.

Since we have determined that Lot 2 does not include parcel B, but rather consists only of parcel A, it follows that Lot 2 is not adjacent to the disputed lands. In fact, this court has said that:

". . . in determining what is adjacent to a tract of land, one does not cross an inlet or lake to locate 'ad-

jacent' properties. . . ." *Kind v. Vilas County, supra,* at 274.

The state's position is not clear. The state may be arguing that even without parcel B, Lot 2 is "adjacent" to the disputed lands because the area originally designated as Lot 2 adjoins the disputed lands. Such an argument would be without merit. We have determined that Lot 2 consists entirely of parcel A, and stops at the water's edge; the lines indicated on the plat are thus completely irrelevant in determining what is "adjacent" to the disputed lands. Because parcel B is not included in Lot 2, it follows that the state is not an "adjacent owner" within the meaning of sec. 30.10(4)(b), Stats. The statute is therefore inapplicable.

Nor could it be said that the state has a "proper claim" to the disputed lands. The basis of the state's claim is not explained, and we consider this claim to relate to parcel C.

The claim to parcel C appears to involve an inherent contradiction. To extend Lot 2 southward beyond parcel A, across the water, to parcel B, the state argues that the meander line, and not the shoreline, marks the lot's boundary. After crossing the lake (and thus becoming an "adjacent owner"), the state would apparently change theories, and extend the lot still farther southward, past the meander line, to the actual shoreline.

Thus the state apparently claims that, on the facts of this case, its lot extends southward past the shoreline of parcel A, across the lake to reach the meander line, and having reached the meander line, extends past it to a second shoreline. Such an approach is indeed novel and, so far as we can ascertain, has never been approved by this court, nor by any other court. The

state cannot be said to have a "proper claim" to parcel B or a proportionate share of parcel C.

## SUMMARY JUDGMENT.

The state maintains that the trial court abused its discretion in granting summary judgment in this action. This court has said that:

". . . Summary judgment should not be granted unless the material facts are not in dispute, no competing inferences can arise, and the law that resolves the issue is clear and overrides any other issues either factual or legal which may appear. . . ." *Ramsden v. Hawkinson Gas Service Co.*, 63 Wis.2d 455, 459, 217 N.W.2d 322 (1974).

It is clear from the record in this case that the material facts are not in dispute, and that no competing inferences can be drawn from the facts. The state asserts that the record before the trial court was inadequate, and that the matter should be remanded for an evidentiary hearing for consideration of unspecified factors bearing on governmental intent. This assertion is unsupported by reference to any material facts which were not before the trial court. All material facts regarding the original survey and the actual topography were before the trial court and were not in dispute. All that remained for the trial court was the application of law to the facts. Therefore, it cannot be said that material facts were in dispute.

However, this court has stated that:

". . . Summary judgment should not be granted unless . . . the law that resolves the issue is clear and overrides any other issues either factual or legal which may appear . . ." *Ramsden v. Hawkinson Gas Service Co., supra*, at 459.

Similarly, this court has held that:

" ' ". . . Summary judgment is proper only where there is no material issue of fact and the question pre-

sented is solely one of law. If there is a dispute as to the material facts, if different inferences might be drawn from the facts, or *if the application of the controlling law to the facts is uncertain, summary judgment should not be granted."'"* Kosmatka v. DNR, 77 Wis.2d 558, 564, 253 N.W.2d 887 (1977). (Emphasis added.) *Quoting Lawver v. Boling,* 71 Wis.2d 408, 413, 414, 238 N.W.2d 514 (1976). *See also: College Mobile Home Park & Sales v. Hoffmann,* 72 Wis.2d 514, 521, 241 N.W.2d 174, 178 (1976); *Fed. Deposit Ins. Corp. v. First Mortg. Investors,* 76 Wis.2d 151, 154, 155, 250 N.W.2d 362 (1977).

In the instant case the general rule regarding boundaries along meandered bodies of water is firmly established and is not contested; the exception for grossly erroneous surveys is equally clear. The state argues that these principles should be changed, modified or extended to accommodate the present situation. We are not persuaded by such arguments.

We are therefore of the opinion that the trial court did not abuse its discretion in granting summary judgment. The trial court reached the correct conclusion on the legal questions presented. The facts were not in dispute; the legal principles were not in doubt. The only possible uncertainty was whether the particular facts of this case required the trial court to extend the recognized exception (*i.e.,* that meander lines are boundaries where the survey is grossly erroneous) to a situation in which it had never been applied so as to reach across a lake and to define a lot as consisting of two small disconnected parcels. The burden of establishing that the general rule should not be applied, and that an exception should be extended to this novel situation, was upon the state. *See: Schultz v. Winther, supra,* at 14. We have determined that this burden was not sustained. The fact that the state urged the trial court to expand an existing rule of law or propound a new rule of law

does not preclude the granting of summary judgment. The trial court did not abuse its discretion.

*By the Court.*—Judgment affirmed.