KIND, Respondent, v. VILAS COUNTY, Appellant.

*No. 165.   Argued October 3, 1972.—Decided November 9, 1972.*
(Also reported in 201 N. W. 2d 881.)

For the appellant there was a brief by *Calvin A. Burton,* district attorney of Vilas county, and oral argument by *Robert D. Martinson,* assistant attorney general.

For the respondent there was a brief by *Drager & O'Brien* of Eagle River, and oral argument by *John L. O'Brien.*

ROBERT W. HANSEN, J. We deal here with the situation of a lake shoreline erroneously meandered in an original U. S. Government survey. Here the discrepancy between survey and situation created a triangular parcel of land, 4.6 acres in area, which is the subject of dispute between adjoining property owners.

Wisconsin has a specific statute dealing with the case of a shoreline erroneously meandered in a government survey. It is sec. 30.10 (4) (b), Stats., and it reads:

(1) "THE BOUNDARIES of lands adjoining waters and the rights of the state and of individuals with respect to all such lands and waters shall be determined in conformity to the common law so far as applicable,"

(2) "BUT IN THE CASE of a lake or stream erroneously meandered in the original U. S. government survey, the owner of title to lands adjoining the meandered lake or stream, as shown on such original survey, is conclusively presumed to own to the actual shore lines unless it is first established in a suit in equity, brought by the U. S. government for that purpose, that the government was in fact defrauded by such survey."

(3) "IF THE PROPER CLAIMS OF ADJACENT OWNERS of riparian lots of lands between meander and actual shore lines conflict, each shall have his proportion of such shore lands."

(Sectionalization and capitalization not for emphasis, but for clarity.)

The question is whether this statute applies. The trial court did not refer to the statute, but we hold it to be clearly applicable. Respondent agrees, and claims that sec. (2) requires affirmance of awarding the triangle to him as owner of lot 4 as "the owner of title to lands adjoining the meandered lake or stream, as shown on such original survey." However, we read this sec. (2) of the statute as referring only to a situation where there is a single landowner of "lands adjoining." A look at the map or exhibit shows that is not the situation here.

Where there are two or more "adjacent owners of riparian lots," as is the case here, it is the second sentence or what we have termed sec. (3) that becomes operative. This provides that, given "proper claims" of "adjacent owners" of "riparian lots" that are "between meander and actual shore lines," each shall "have his proportion

of such shore lands." We do not have here the case of an owner of a single lot that is the only lot "adjoining" the lake. Rather we have two owners of lots that must be found to be "adjacent" to the parcel of land in dispute.

However, we do not find all three lots owned by appellant as coming within the statutory requirement of being "adjacent." On the issue of original intent, appellant makes a strong case for adding the disputed triangle to lot 8. However, the fact that a portion of the lake separates lot 8 from the disputed triangle removes it from the category of "adjacent." A lot can be composed of two parcels of land entirely separated by water. (*See: Weaver v. Knudson* (1964), 23 Wis. 2d 426, 431, 127 N. W. 2d 217.) However, in determining what is adjacent to a tract of land, one does not cross an inlet or lake to locate "adjacent" properties. Lot 8 does not meet the threshold statutory requirement that it be adjacent.

On this record, lot 5, also owned by appellant, drops out of the picture. Technically, it does adjoin the disputed parcel. However, appellant's brief concedes that lot 5 ". . . joins the disputed parcel only in the narrow technical sense that it corners the parcel, and does not have a common boundary." Appellant's brief states that, "lot 5 would appear to drop out of the matter." This we see as an abandonment of the claim of lot 5, and we see the claimants for consideration here to be the appellant as owner of lot 6, and the respondent as owner of lot 4.

If the statute could be read as requiring a down-the-middle or equal division of the disputed parcel between adjoining riparian owners, the case would be over. The single triangle would be divided into two triangles, and one would go to each of the two claimants. But, whatever the proponents of the statute intended,[1] the legisla-

---

[1] *See:* "The Status of Title to Lands Bordering on Erroneously Meandered Lakes," Brief by O'Melia and Kaye, Rhinelander, pre-

ture did not mandate that the disputed tract was to be divided equally between the two claimants. To read this in would be to conflict squarely with the first sentence of sec. (1) which provides boundaries are to be "determined in conformity to the common law so far as applicable," subject to the conclusive presumption operable only where there is a single "owner of title to lands adjoining." The reference to "his proportion" in the second sentence or sec. (3) of the statute can mean only such fair proportion as application of common law approaches would suggest. We hold the statute to require, where there are "proper claims" by "adjacent owners of riparian lots," the disputed parcel be awarded, proportionally, on an equitable, but not necessarily equal basis.

Both parties argue, and the trial court considered the situation to be, that, the statute aside, one lot or the owner thereof must win, and all others must lose. Intent is to be ascertained (*See: Blatchford v. Voss* (1929), 197 Wis. 461, 469, 219 N. W. 100, 222 N. W. 804), meaning intent of the government at the time of the original survey. (*See: Weaver v. Knudson, supra.*) Intent located or determined from relevant factors, one claimant wins. All others lose. But sec. 30.10 (4) (b), Stats., clearly substitutes a search for an equitable division of the property, for the search for the intent of the government at the time of making the original survey.

Given proper claims on behalf of appellant as owner of lot 6 and respondent as owner of lot 4, the trial court must determine what is an equitable or fair division of the triangle in dispute. If the court were to find equal merit or equity in the two claims, the indicated propor-

sented to the legislature in connection with ch. 154, Laws 1931 (now sec. 30.10, Stats.). It is clear that the statute was designed to change the common law. However, there is no explanation of what is meant by "each shall have his proportion of such shore lands."

tionate division would be 50–50. If the balancing of equitable factors resulted in an 80–20 or 60–40 outcome, the actual proportionate award to each claimant would be 80–20 or 60–40.

While the statute states "each shall have his proportion of such shore lands," we do not close the door to a 100 percent award of a disputed parcel to one of two or more disputing adjoining landowners. However, it appears to us that such award would have a finding that only one claim was a "proper claim" under the statute; that is, a claim with substance and merit. It might be argued that is what the trial court has here done, not only found merit to the claim of respondent, but also found no weight or substance at all to the claims of appellant. We doubt that this was done, but, even if it had been, reversal would be required because there is no indication that the trial court was acting, or felt it could act, under sec. 30.10 (4) (b), Stats., and that it could award to appellant and respondent a proportion of the parcel in dispute.

In determining the equities of the situation, and determining the proportion to be awarded to each of two claiming as "adjacent owners of riparian lots," the trial court is to consider the factors that have been held relevant to a search for the intent of the government at the time of making the original survey. But, now, under the statute, the search is for equity, not intent. No one factor, or even combination of factors, is necessarily controlling. What we are terming "relevant factors" are the facts and circumstances involved in the particular situation. They involve the topography, the amount of shoreline and acreage of each lot involved, the extent to which each lot "adjoins" the disputed parcel, the value and uses of the land or lots involved. Also involved is the impact of a proposed distribution; for example how much it gives to each claimant and whether, on balance,

the proposed distribution appears fair and equitable to each claimant.

We do not seek to list all of the relevant factors or surrounding circumstances that might be considered. We do note, however, that previous cases dealing with intent remain relevant in seeking guidelines for an equitable, proportional division of the disputed property.[2]

It is not here required that there be a new trial to establish the factors which the trial court may consider. What is required is that new findings of fact and conclusions of law be made pursuant to sec. 30.10 (4) (b), Stats. Appellant, as owner of lot 6, and respondent, as owner of lot 4, have "proper claims" under the statute. As such, each, pursuant to the statute, "shall have his proportion of such shore lands." It remains for the trial court to make the fact findings, and determine a fair and equitable division or award of the parcel in dispute.

*By the Court.*—Judgment reversed, and cause remanded with directions that the trial court make new findings of fact and conclusions of law and enter judgment, pursuant to sec. 30.10 (4) (b), Stats., not inconsistent with this opinion.

---

[2] *See, for example: Schultz v. Winther* (1960), 10 Wis. 2d 1, 101 N. W. 2d 631; *Lally v. Rossman* (1892), 82 Wis. 147, 51 N. W. 1132; *Baackes v. Blair* (1936), 223 Wis. 83, 269 N. W. 650; *Blatchford v. Voss* (1929), 197 Wis. 461, 219 N. W. 100, 222 N. W. 804. Some of the factors considered include: The area of land between the meander line and the actual shore; whether the error in the meander line was sufficient so that the meander line would constitute the boundary; the type and comparative value of the land at the time; the preference for regularly shaped parcels of land; and consequences such as depriving one claimant of all lake frontage.